IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KHAREEMA SALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   24 C 5627 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| EQUIFAX INFORMATION SERVICES, LLC; and TRANSUNION, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Khareema Salley sued Experian, Equifax, and Trans Union—the "Big Three" credit reporting agencies—in the Circuit Court of Cook County alleging that they had violated the Fair Credit Reporting Act ("FCRA").  Shortly thereafter, the case was removed to this court. Plaintiff now moves to remand the case back to state court, arguing that she has no Article III standing in federal court because she has alleged no concrete injury in fact.  Two of the agencies, Trans Union and Equifax, disagree and oppose the motion (Experian has been dismissed from the case by a stipulated dismissal).  Because plaintiff has not clearly alleged facts that establish an injury in fact, the court grants the motion to remand.

## BACKGROUND

The FCRA was enacted in 1970 "to promote 'fair and accurate credit reporting' and to protect consumer privacy."  TransUnion LLC v. Ramirez, 594 U.S. 413, 418 (2021) (quoting 15 U.S.C. § 1681(a)).  To achieve that aim, it "regulates the consumer reporting agencies that compile and disseminate personal information about consumers."  Id.  In doing so, it "imposes a host of requirements concerning the creation and use of consumer reports."  Id.

Plaintiff alleges that defendants violated some of those requirements. According to plaintiff, she incurred a debt, which was obtained and reported by LVNV Funding. In reviewing her credit report, she says, she noticed certain inaccuracies related to the debt. She thus sent letters to each defendant asking them to investigate. But, she says, they did not respond.

So she sued them in the Circuit Court of Cook County. She alleges in her complaint that defendants violated the FCRA by failing to reasonably "reinvestigate" the disputed information in her credit reports, by failing to use reasonable procedures to ensure the information in her reports was accurate, and by failing to remove the inaccurate information. See 15 U.S.C. §§ 1681i(a), 1681e(b). Defendants' inaccurate reporting, she avers, "impaired" her "ability to improve [her] financial situation by obtaining new or more favorable credit terms" and "discouraged" her "from applying for new credit." And she claims that she was "afraid" that she "would be denied credit," was "frustrated by Defendants' persistent inaccuracies on their credit report," and was "afraid that the inaccuracies would be communicated to [her] potential creditors." As a result, she claims, she "withdrew from the credit market."

In response to the lawsuit, Trans Union (with Experian's and Equifax's consent) removed to federal court, invoking federal question jurisdiction. See 28 U.S.C. §§ 1331, 1441.

## DISCUSSION

Plaintiff seeks to remand the case to state court. She asserts that the allegations in her complaint are insufficient to confer Article III standing and so, she says, the court lacks federal jurisdiction. Defendants disagree.

2

"When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal courts, the defendant may remove the action to federal court." Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 758 (7th Cir. 2009). Defendants here, as the parties invoking federal jurisdiction, bear the burden of establishing its existence. Id. And so, the court must "resolv[e] any doubt" over federal jurisdiction "in favor of the plaintiff's choice of forum in state court." Id. If the court finds that it lacks federal jurisdiction, it must remand the case back to state court. 28 U.S.C. § 1447(c). The court concludes that remand is appropriate because defendants have failed to show that the court has federal jurisdiction.

"It is a fundamental precept that federal courts are courts of limited jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Article III of the Constitution, for example, "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion, 594 U.S. at 423. Indeed, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016) (cleaned up). To "ensure that federal courts do not exceed their authority" to adjudicate only cases or controversies, the Supreme Court developed the doctrine of standing. Id. at 338.

The standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" TransUnion, 594 U.S.

3

Case: 1:24-cv-05627 Document #: 24 Filed: 12/17/24 Page 4 of 13 PageID #:182

at 423 (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)).

Disputes over standing often hinge on injury-in-fact—the "first and foremost element of standing." Casillas, 926 F.3d at 333 (cleaned up). So too does this one. When, as here, the case is at the pleading stage, the inquiry turns on whether the plaintiff "clearly alleged facts demonstrating" an injury-in-fact. Spokeo, 578 U.S. at 338 (cleaned up). In considering that question, the court is "limited to the complaint's general factual allegations of injury resulting from the defendant's conduct." Wadsworth v. Kross, Lieberman & Stone, Inc., 12 F.4th 665, 667 (7th Cir. 2021) (cleaned up).

To establish an injury in fact, a plaintiff must show that she has suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, 578 U.S. at 339 (cleaned up). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." Id. (cleaned up). To be concrete, it generally should have "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." TransUnion, 594 U.S. at 424 (cleaned up). Both tangible harms (like physical and monetary harms) and intangible harms (like reputational harms, disclosure of private information, and intrusion upon seclusion) may qualify. Id. at 425.

In deciding whether a harm is sufficiently concrete for standing purposes, courts may consider Congress's views. Id. That is because "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation."

4

Id. At the same time, courts must bear in mind that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." Id. at 426 (citation omitted). "Article III standing," then, "requires a concrete injury even in the context of a statutory violation." Spokeo, 578 U.S. at 341; see also TransUnion, 594 U.S. at 426-27 ("[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."). Or said another way (as relevant here): plaintiff "cannot demonstrate standing simply by pointing to" defendants' alleged FCRA violations. Casillas, 926 F.3d at 333.

Yet plaintiff argues here that pointing to defendants' FCRA violations is precisely all that she has done. According to plaintiff, her "complaint contains no allegations that [she] suffered a concrete harm or appreciable risk of harm apart from the statutory [FCRA] violation itself" and no "factual support" for any such allegations. Her allegations of being "afraid," "frustrated," and "discouraged," she contends, "can be categorized as claims of a (a) future harm, and (b) emotional injuries"—neither of which, she argues, constitute concrete injuries.

Defendants counter, arguing that plaintiff has sufficiently alleged an injury in fact. That is because, they say, she has alleged injuries that would lead to cognizable damages under the FCRA, she has alleged that her inaccurate credit report was disclosed to third parties, and she has alleged that she is entitled to $10,001.01 in actual damages. Defendants also argue that plaintiff's motion "is nothing more than a thinly veiled attempt to engage in forum shopping," and that the court should apply the "artful pleading doctrine" to reject her gamesmanship. And

they contend that, if the court finds no standing, it should preclude her from pursuing any damages theories on remand or strike her actual-damages allegations from the complaint.

Starting with allegations in the complaint themselves, the court finds that defendants have not established that plaintiff clearly pleaded a concrete harm that could support standing. As both parties acknowledge in their briefing, the court is not starting from a blank slate here: several courts in this district have already considered virtually the same allegations (against one or more of the same defendants) and the same arguments, and each reached the same conclusion—no standing. See Dixon v. Experian Info. Sols., Inc., Nos. 24-cv-1123, 24-cv-1361, __ F. Supp. 3d __, 2024 WL 3455038, at *2-3 (N.D. Ill. Jun. 18, 2024) (finding no standing and remanding); Cicenas v. Experian Info. Sols., Inc., No. 1:24-cv-01060, slip op. at 2-3 (N.D. Ill. Aug. 15, 2024) (same); McCray v. Experian Info. Sols., Inc., No. 1:24-cv-01527, slip op. at 2-3 (N.D. Ill. July 11, 2024) (same); see also Roman v. Experian Info. Sols., Inc., No. 1:24-cv-01141 (N.D. Ill. Aug. 29, 2024) (remanding without written opinion).

The court finds no reason here to break from these other cases. To begin with, like these other courts, the court finds that defendants' contention that plaintiff pleaded allegations of concrete harm is unavailing. For example, defendants point to plaintiff's allegations that she was "discouraged from applying for new credit" and was "afraid that [she] would be denied credit," which would "further harm [her] credit score." But the court agrees with the Dixon court that these and her other related allegations—that she was "frustrated" by the inaccuracies on her credit report and was "afraid" they "would be communicated to [her] potential creditors"—amount to "purely emotional harms like fear or anxiety," which the "Seventh Circuit has repeatedly found" are "insufficient for standing purposes." 2024 WL 3455038, at *2 (citing

6

Wadsworth, 12 F.4th at 668 ("As our bevy of recent decisions on FDCPA [Fair Debt Collection Practices Act] standing makes clear, anxiety and embarrassment are not injuries in fact.")); see also Pucillo v. Nat'l Credit Sys., Inc., 66 F.4th 634, 639 (7th Cir. 2023) (explaining in FDCPA case that "plaintiff must show a harm beyond emotional response"); Pierre v. Midland Credit Mgmt., Inc., 29 F.4th 934, 939 (7th Cir. 2022) (explaining in FDCPA case that "[p]sychological states" like "worry" and "confusion" are "insufficient to confer standing in this context"); Persinger v. Sw. Credit Sys., L.P., 20 F.4th 1184, 1191 (7th Cir. 2021) (explaining in FCRA case that "stress" "is not a concrete injury").[1]

These allegations also "amount to fears about the risk of future harm, which the Supreme Court has foreclosed as a basis for concrete injury in anything other than suits for injunctive relief." Dixon, 2024 WL 3455038, at *2 (citing Pierre, 29 F.4th at 938 ("[A] risk of harm qualifies as a concrete injury only for claims for 'forward-looking, injunctive relief to prevent the harm from occurring.'" (quoting TransUnion, 594 U.S. at 435)); see also Pucillo, 66 F.4th at 638 (explaining that the plaintiff's alleged "fear that the non-payment of the debt would impact his credit, or that he is scared because he thought it would take even longer to improve his credit" "reflect concerns over harms that might occur, not those that have occurred" (cleaned up)); Cicenas, slip op. at 2 ("The Supreme Court has held that allegations of harm that has yet to 'materialize' are insufficient to establish standing." (citing TransUnion, 594 U.S. at 437)). As the McCray court succinctly put it: "Because [p]laintiff does not allege a concrete injury to

---

[1] Although the FDCPA and the FCRA are distinct consumer protection statutes, the standing principles "in the two contexts are largely interchangeable." Dixon, 2024 WL 3455038, at *2 n.2; see also Persinger, 20 F.4th at 1191 (relying on Wadsworth, 12 F.4th at 668-69, an FDCPA case, for proposition that "stress" does not constitute a concrete injury in a FCRA case).

7

accompany her feelings of fear, frustration, and discouragement, these feelings are . . . insufficient to establish standing." McCray, slip op. at 2.

Defendants also direct the court to plaintiff's allegation that defendants' actions have "impaired" her ability to obtain new or more favorable credit terms. But that allegation—and her related assertion that she "withdrew from the credit market"—"lack enough surrounding factual detail to render these alleged harms concrete." Dixon, 2024 WL 3455038, at *2. She does not allege, for example, "that she attempted to obtain new or better credit terms and failed, that she applied for new credit and was denied, that her credit score was harmed, or that the inaccurate credit reports were communicated to potential creditors." McCray, slip op. at 2; see also Dixon, 2024 WL 3455038, at *2 ("[T]he complaints are silent as to how plaintiffs would have sought new or improved credit absent their reports' inaccuracies."). Nor does she aver how the alleged "inaccuracies impeded" such efforts. Dixon, 2024 WL 3455038, at *2; see also McCray, slip op. at 2 (explaining that complaint fails to "indicate that she had plans of obtaining new or better credit that were prevented by the risk of harm the inaccurate reports posed").

Defendants attempt to analogize plaintiff's allegations here to those in Woessner v. Midland Funding LLC, No. 1:21-cv-0214, 2021 WL 6000514, at *1 (S.D. Ind. Dec. 20, 2021), where the court found standing. In Woessner, the plaintiff "looked" at his credit report because he needed to "get a better rate for a mortgage/car loan and noticed some problems." 2021 WL 6000514, at *1. The court found that his "search for better rates points to a risk of financial harm as a result of credit reporting agencies lowering his credit score based on the alleged inaccuracies in his credit report." Id. (cleaned up). That search, the court concluded, was enough for standing purposes because it amounted to a "complain[t] of being deprived of some

8

benefit" or "a chance to obtain a benefit." Id. (quoting Casillas, 926 F.3d at 334). But even if the Woessner court's conclusion on standing were correct (which this court questions), the allegations here are distinguishable: plaintiff does not allege that she was searching for—or otherwise attempting to apply for—any new credit. So, unlike the plaintiff in Woessner, plaintiff here has not alleged any deprivation of a benefit or a chance to obtain a benefit. Defendants' reliance on Woessner is thus misplaced.

So too is their reliance on Casillas. Like the plaintiff in Casillas, plaintiff here has not clearly alleged any facts that would support that she was "deprived of some benefit," "a chance to obtain a benefit," or a "lost opportunity." Casillas, 926 F.3d at 334 ("Casillas did not allege any comparable lost opportunity."). As the McCray court explained, "because [p]laintiff alleged no specific 'lost opportunity,' such as the sharing of a background check with a potential employer or creditor, her impairment cannot be considered a concrete injury." McCray, slip op. at 2 (quoting Casillas, 926 F.3d at 334).

Apart from the emotional and economic harms, defendants also suggest that plaintiff has alleged that her inaccurate credit reports were disclosed to third parties and that this establishes a concrete injury. The court is unpersuaded. To be sure, clear allegations of third-party dissemination would establish an injury in fact. The Supreme Court in TransUnion, for example, held that a group of plaintiffs in a class action asserting certain FRCA violations had "suffered a concrete injury in fact under Article III" because the reports at issue there—which labeled those plaintiffs "as potential terrorists, drug traffickers, or serious criminals"—had been "disseminated to third parties." 594 U.S. at 432-33. As a result, the Court concluded, the

9

plaintiffs had "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." Id. at 432.

But plaintiff here has not clearly alleged that her reports were disseminated to any third party. Defendants refer to her allegations about "information being reported" by defendants and defendants "fail[ing] to correct the inaccurate reporting." The court is not convinced, however, that these statements are an attempt to allege dissemination to a third party. Even if they were, though, they are too vague and insubstantial to clearly allege facts establishing a concrete harm. See Hossain v. Trans Union, LLC, No. 22CV5541, 2022 WL 14058958, at *4 & n.3 (E.D.N.Y. Oct. 24, 2022) (finding that even an express "passing reference" in a complaint "to preparation and distribution of consumer report to third parties" was "insufficient to establish such concrete harm or injury-in-fact under TransUnion" without any additional details); see also Spokeo, 578 U.S. at 338 (plaintiff must "clearly allege facts demonstrating" a concrete injury). Plaintiff has not alleged, for example, when and how her credit report was shared or to whom it was shared. Defendants have thus failed to establish that plaintiff clearly alleged any third-party dissemination.

That leaves defendants' actual-damages argument—that plaintiff's seeking $10,001.01 in actual damages supports that she suffered a concrete injury. The court agrees with the Dixon, Cicenas, and McCray courts that defendants' assertion lacks merit because plaintiff fails to plead any facts tying the damages to any concrete harm. See Dixon, 2024 WL 3455038, at *2 ("[C]onclusory requests for particular damages shed little light on the concrete harm plaintiffs suffered and are insufficient to bring the suits within this court's jurisdiction."); Cicenas, slip op. at 2 ("The problem with this argument is that Cicenas's allegation of actual damages of

10

$10,001.01 is not tied to any concrete harm that has actually occurred."); McCray, slip op. at 3 (stating that defendants' actual-damages argument was "incorrect"). As the Seventh Circuit has held, "[a] mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." Collier v. SP Plus Corp., 889 F.3d 894, 896 (7th Cir. 2018); see id. at 895-96 (holding that plaintiffs that alleged in their state law complaint that actual damages "exceed[ed]" $25,000, but that failed to describe any accompanying concrete harm, lacked standing).

In short, defendants have not shown that plaintiff has clearly alleged a concrete injury in fact to support Article III standing.

Unable to do so, defendants invoke the "artful pleading doctrine," arguing that the court should apply it here to reject what they perceive to be plaintiff's gamesmanship. But this court, like the Dixon court, is not persuaded that the "artful pleading doctrine" applies. Under that doctrine, a "plaintiff may not frame his action under state law and omit federal questions that are essential to recovery," Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992) (citations omitted)—or otherwise "artfully omit[ ] pleading facts essential to show the federal nature of plaintiff's claim," Oglesby v. RCA Corp., 752 F.2d 272, 278 (7th Cir. 1985)—to avoid federal jurisdiction. The doctrine permits courts to "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." Burda, 954 F.2d at 438. If the court finds that he has done so, it will conclude that the "plaintiff's claim actually arose under federal law and is therefore removable." Id. But as the Dixon court explained, plaintiff here has "made no attempt to hide that [her] case depends entirely on a federal statute." 2024 WL 3455038, at *3. The fact is, a "plaintiff is the master of

her own complaint" and is generally free to "steer clear of federal court"—even openly so—if she wants. Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1246, 1248 (7th Cir. 2021). Defendants' appeal to the "artful pleading doctrine" therefore misses the mark.

Nor, finally, does the court find it necessary or appropriate to hold "an evidentiary hearing" on actual damages, to "preclude[ ]" plaintiff "from pursuing any" damages theories in the future, or to strike "the damage allegations" from the complaint, as defendants request. As for a hearing, "[t]here is no need to hold a hearing to figure out if [plaintiff] suffered an injury, when [she] agrees that she suffered no injury." Smith v. Experian Info. Sols., Inc., No. 22-CV-6825, 2023 WL 9169673, at *3 (N.D. Ill. Dec. 22, 2023) (rejecting request to hold an evidentiary hearing before granting motion to remand). As for precluding or striking, defendants have not shown that it would be appropriate to do so. That is unsurprising: the court, for example, has "no basis to order the[ ] plaintiff[ ] how to plead [her] case in state court after remand." Collier, 889 F.3d at 897 (rejecting the defendant's request to order the plaintiffs to amend their complaint "to support their allegations of actual damages or strike these allegations from that Complaint"); see also Dixon, 2024 WL 3455038, at *3 (rejecting defendants' request to "bind plaintiffs to their admission that they have no actual damages"). At the end of the day, if plaintiff does an about-face and later asserts concrete harms, defendants can remove again. See Collier, 889 F.3d at 897 ("[i]f, after remand, [the plaintiffs] were to amend their complaint to state an injury in fact," or to otherwise "affirmatively and unambiguously reveal[ ] that the predicates for removal are present," the defendant could "then remove the case to federal court").

12

**CONCLUSION**

For the above reasons, the court grants plaintiff's motion to remand the case to state court (Doc. 18). The case is thus remanded to the Circuit Court of Cook County forthwith.

**ENTER:**

Robert W. Gettleman
United States District Judge

**DATE: December 17, 2024**